UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

HASHIM JALMIRAN,

            Plaintiff,

      v.                                    CIVIL NO. 2:22cv149

ALUTIIQ COMMERCIAL ENTERPRISES, LLC

            Defendant.

### MEMORANDUM ORDER

    This matter comes before the court on Defendant's Motion to
Dismiss for Failure to State a Claim ("Motion"). See ECF No. 12.
For the following reasons, the Motion **DENIED**.

### I. PROCEDURAL HISTORY

    Plaintiff filed his Complaint, ECF No. 1, on April 7, 2022,
alleging that his employer, Alutiiq Commercial Enterprises, LLC
("ACE" or "Defendant") discriminated against him in violation of
Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e
et seq. Defendant moved on May 26, 2022, to dismiss the Complaint
for failure to state a claim, ECF No. 6, and filed an accompanying
Memorandum In Support, ECF No. 7. Thereafter, Plaintiff filed his
First Amended Complaint on June 9, 2022 ("Amended Complaint"). ECF
No. 11. The Amended Complaint alleged two violations under Title
VII: wrongful termination and retaliation. Id. On June 23, 2022,
Defendant filed its Motion, ECF No. 12, along with a Memorandum In
Support, ECF No. 13. Plaintiff responded on July 7, 2022, ECF

No. 14, and Defendant replied on July 13, 2022, ECF No. 15. Accordingly, having been fully briefed, the Motion is now ripe for judicial determination.

## II. LEGAL STANDARD

A complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To meet the pleading standard established in Rule 8 of the Federal Rules of Civil Procedure and survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (collecting cases). However, "courts need not accept a complaint's legal conclusions," ACA Fin. Guar. Corp v. City of Buena Vista, Va., 917 F.3d 206, 212 (4th Cir. 2019) (citing Iqbal, 556 U.S. at 678), as Rule 8 "does not unlock the doors of discovery for

a plaintiff armed with nothing more than conclusions," <u>see</u>
<u>Iqbal</u>, 556 U.S. at 678-79.

### III. FACTUAL BACKGROUND[1]

The court draws the following facts from the Amended
Complaint, which it accepts as true for the purposes of ruling on
the instant motion.[2] From February 2019 through June 2021,
Plaintiff was employed by ACE as a Program Manager ("PM"). Am.
Compl. ¶ 11. During his period of employment, Plaintiff was
assigned to the Sully Compound at the United States Embassy's
Diplomatic Support Center in Baghdad, Iraq. <u>Id.</u> ¶ 12.

### A. Complaint to State Department EEO

Plaintiff alleges that various State Department employees
tried to prevent him from being hired to his position at the
Sully Compound and, thereafter, attempted to have him fired. <u>Id.</u>
¶¶ 13-15. On May 17, 2019, Plaintiff contacted the State
Department's Equal Employment Office (EEO), complaining about the
alleged discrimination and hostile work environment he was facing,
<u>id.</u> ¶ 16, ultimately filing a formal complaint on July 16, 2019,
<u>id.</u>

---

[1] A summary timeline of the relevant events is attached
hereto as Exhibit A.

[2] Plaintiff bases his two claims on the same set of operative
facts. <u>See</u> Am. Compl. ¶¶ 43, 48.

Plaintiff alleges that various ACE employees were aware of his complaint to the State Department's EEO. Plaintiff directly notified several ACE employees of his complaint, id. ¶¶ 18-20, and alleges that at least one ACE employee participated in the ensuing investigation, id. ¶ 17. On December 17, 2020, while the complaint was still pending before an Administrative Law Judge ("ALJ"), Plaintiff's received a written warning from Defendant.[3] Id. ¶ 22.

## B. ACE Inquiry into Plaintiff's Prayer Ritual

During his period of employment at the Sully Compound, Plaintiff alleges that General Services Officer Rebecca Jones-Anderson allowed all compound employees to take breaks in unoccupied temporary duty travel (TDY) rooms. Id. ¶ 27. Plaintiff used these unoccupied TDY rooms to pray throughout the day, in accordance with his Muslim faith. Id. ¶ 27. Plaintiff emphasizes that the TDY rooms were the only private location on the Sully Compound appropriate for prayer. Id. ¶ 28.

On June 16, 2021, Plaintiff received a call from Allen Rogers, ACE Corporate Program Manager, and Sherri Richardson, ACE HR Supervisor, regarding Plaintiff's use of the TDY rooms. Id. ¶ 10, 23. Plaintiff alleges that Rogers and Richardson inquired whether a prayer rug stored in one of the TDY rooms belonged to

---

[3] The Amended Complaint does not specify the nature or content of this warning, yet Plaintiff claims that "[t]he allegations in the written warning were false and baseless." Am. Compl. ¶ 22.

him and communicated that a State Department employee had expressed "concern" over the prayer rug's use. Id. ¶¶ 23-25. After Plaintiff confirmed that the prayer rug was his, he alleges that Rogers and Richardson "suggested that Plaintiff pray at the [Sully Compound] bar," instead. Id. ¶ 26.

Less than two weeks after the phone call, on June 27, 2021, Plaintiff was informed that he had been terminated because Defendant had "lost confidence" in Plaintiff's ability to manage his team. Id. ¶¶ 30, 32. No additional justification for his termination was provided and Plaintiff he was then promptly escorted to a plane departing the compound. Id. ¶¶ 31, 34. Plaintiff emphasizes that he had, up until his termination, received "praise and accolades" from various State Department and ACE employees. Id. ¶¶ 37-42.

On September 15, 2021, Plaintiff submitted a charge of discrimination against ACE to the EEOC. Id. ¶ 4. The EEOC issued Plaintiff a right to sue notification on January 14, 2022, id. ¶ 5, after which Plaintiff timely filed his suit within 90 days, see ECF No. 1.

## V. ANALYSIS

### A. Count One – Wrongful Termination

Count One of Plaintiff's Amended Complaint alleges that Defendant violated Title VII by wrongfully terminating his employment because of his religion. Am. Compl. ¶¶ 43-47. Title VII

prohibits an employer from "discharg[ing] any individual, or []
otherwise discriminat[ing] against any individual . . . because of
such individual's . . . religion. . . ." 42 U.S.C. § 2000e-2(a)(1).

At the motion to dismiss stage, an employment discrimination
plaintiff is not required to plead a prima facie case. See Bing v.
Brivo Sys., LLC, 959 F.3d 605, 616-17 (4th Cir. 2020) (citing
Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002)). Instead,
the plaintiff is merely "required to allege facts to satisfy the
elements of a cause of action created by that statute."
McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780
F.3d 582, 585 (4th Cir. 2015). Accordingly, the relevant inquiry
at the motion to dismiss stage is whether Plaintiff has alleged,
"above a speculative level," that Defendant fired him because of
his religion. Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190
(4th Cir. 2010) (quoting Twombly, 550 U.S. at 555); see also
McCleary-Evans, 780 F.3d at 585-86.

In its Motion, Defendant argues that Plaintiff failed to meet
his pleading standard because he was required to show that
"similarly-situated employees outside of his protected class
received more favorable treatment." ECF No. 13 at 5 (citing Hill
v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th
Cir. 2004). However, Defendant misapplies the standard used in
Hill to the instant case. In Hill, the Fourth Circuit affirmed the
district court's grant of summary judgement in a failure to promote

6

case. As Plaintiff points out, ECF No. 14 at 5, Fourth Circuit precedent has made clear that the proper inquiry at the motion to dismiss stage is different. See Woods v. City of Greensboro, 855 F.3d 639 (4th Cir. 2017). In Woods, the Fourth Circuit stated that "evidentiary determinations regarding whether [] comparators' features are sufficiently similar to constitute appropriate comparisons generally should not be made at [the motion to dismiss stage]." Woods, 855 F.3d at 650. Instead, "[t]he similarly situated analysis typically occurs in the context of establishing a prima facie case of discrimination, not at the 12(b)(6) stage." Id. at 651 (citing Haywood v. Locke, 387 Fed.Appx. 355, 358-59 (4th Cir. 2010)); see also Tutt v. Wormuth, No. 19-2480, 2021 WL 2076729, *2 (4th Cir. Sept. 8, 2021). As such, Plaintiff is merely required at this juncture to plausibly allege that: (1) he was terminated; (2) because of his religion.

While support for Plaintiff's claim is not overwhelming, he has offered several facts which support his claim beyond a speculative level.[4] First, Plaintiff emphasized that, throughout his employment at the Sully Compound, he received numerous positive reviews from both ACE and State Department employees. Am. Compl.

---

[4] "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556 (internal citations omitted). See also Felder v. MGM Nat'l Harbor, LLC, No. 20-2373, 2022 WL 2871905, at *1 (4th Cir. July 21, 2022) (same).

¶¶ 37-42. Second, Plaintiff has alleged that his use the TDY rooms for personal use during breaks was explicitly authorized by his supervisor. Id. ¶ 27. Third, Plaintiff has alleged that the June 16, 2021, phone call went beyond simply inquiring into the circumstances under which defendant used the TDY rooms. Plaintiff alleged that Defendant suggested that he instead pray in the local bar, where gambling and the consumption of alcohol occurred. Id. ¶ 26. This suggestion plausibly alleges that there was an animus against Plaintiff's religion. Finally, approximately eleven (11) days after the phone call, Plaintiff was fired with little explanation and quickly escorted off the compound. Id. ¶¶ 30, 32.

Ultimately, the facts alleged in the Amended Complaint lead to a reasonable inference that Defendant's stated reason for his termination may have been pretextual. See Holloway v. Md., 32 F.4th 293, 299 (4th Cir. 2022) (reversing the district court's dismissal for failure to state a claim because Plaintiff sufficiently raised an inference that Defendant's "reasons [for termination] were a pretext for race discrimination."). Accordingly, Defendant's Motion as to Count One is **DENIED**.

## B. Count Two – Retaliation

Count Two of Plaintiff's Amended Complaint alleges that Defendant violated Title VII by retaliating against him for engaging in protected activity. Am. Compl. ¶¶ 48-50. Title VII prohibits an employer from retaliating against an employee

"because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in [a Title VII] investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). To establish retaliation in violation of Title VII, a plaintiff must show: (1) that he engaged in a protected activity; (2) that his employer took an adverse employment action against him; and (3) that there was a causal link between the two events. See Ray v. Int'l Paper Co., 909 F.3d 661, 669 (4th Cir. 2018); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015).

Defendant does not dispute that Plaintiff has met the first two elements of the retaliation framework. See ECF No. 13 at 9-12. Instead, Defendant argues that Plaintiff has failed to sufficiently allege that there was a causal connection between his protected activity (the complaint to the State Department's EEO in 2019) and the adverse employment action (his termination by ACE in 2021). Id. In particular, Defendant submits that causation cannot be established because: (1) the EEO complaint was filed in 2019 against the State Department, rather than against Defendant; and (2) too much time had elapsed between Plaintiff's protected activity in 2019 and his firing by ACE in 2021. Id.

As an initial matter, nothing in the text of 42 U.S.C. § 2000e-3(a) indicates that an employee's protected activity must

be in response to the defendant's unlawful activity, as opposed to some third-party's unlawful activity. Rather, the statute broadly prohibits an employer from retaliating against an employee who "opposed *any practice* made an unlawful employment practice by this subchapter. . . ." 42 U.S.C. § 2000e-3(a) (emphasis added). The fact that Plaintiff's protected activity (the EEO complaint with the State Department) was directed against a third party (the State Department) may weaken Plaintiff's claim of a causal connection, but it does not eliminate it. Further, there is a significant relationship here between the third party and Defendant: The State Department was ACE's client. Plaintiff's argument that Defendant had an interest in preventing its employee from submitting a Title VII complaint against its client is persuasive. See ECF No. 14 at 6. This relationship is relevant for showing plausible retaliatory intent.

Next, Defendant points out in its Motion that approximately twenty-five (25) months passed between May 2019, when Plaintiff initially notified ACE that he had filed a complaint with the State Department EEO, and June 2021, when Plaintiff's employment was terminated. ECF No. 13 at 10; see Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004) (discussing that the relevant initiating event is not the protected activity itself, but the employer's knowledge of the activity). Although temporal proximity between an employer's knowledge of protected activity and an

10

adverse employment action can support an inference that the employer acted "because" of that protected activity, see Thomas v. City of Annapolis, Md., 851 Fed.Appx. 341, 350-51 (4th Cir. 2021), generally, the temporal proximity between the two events must be "very close," Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (per curiam). Thus, Defendant is correct to the extent they exclaim that the relevant time period in this case, on its face and on its own, is insufficient to establish causation. See Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 127 (4th Cir. 2021) (finding that a three-month period between the protected activity and the adverse action did not support a finding that there was a causal link); Price, 380 F.3d at 213 ("[A] causal connection for purposes of demonstrating a prima facie case exists where the employer takes adverse employment action against an employee shortly after learning of the protected activity.")

However, cases that dismiss retaliation claims based on a lack of temporal proximity have held so because there was an absence of any other facts supporting an inference of retaliatory intent. See Clark County Sch. Dist., 532 U.S. at 273; Thomas, 851 Fed.Appx. at 350. Alternatively, though, courts have found that intervening acts between the employer's knowledge of the protected activity and the retaliatory action may serve as additional evidence sufficient to "bridge what would otherwise be a

prohibitively long temporal gap." See e.g., Holloway, 32 F.4th at 300 (citing Tutt, 2021 WL 4076739 at *2).

Here, the actual length of time between ACE's knowledge of Plaintiff's protected activity and his termination does not preclude establishing a causal connection, because Plaintiff has sufficiently alleged other facts that support an inference of retaliatory intent. In other words, Plaintiff has alleged facts beyond mere temporal proximity and has alleged several intervening acts which "bridge" the "temporal gap" in his case. See Holloway, 32 F.4th at 300. First, Plaintiff alleged that, on December 17, 2020, Defendant issued a written warning to Plaintiff. Am. Compl. ¶ 22. While the content of this warning is not clear from the pleadings,[5] its context in Plaintiff's broader timeline leads to a reasonable inference that it was related to Plaintiff's protected activity. Twombly, 550 U.S. at 570.

Second, Plaintiff claims that the State Department EEO's investigation was on-going throughout his employment with ACE, see ECF No. 14 at 7, and that at least one ACE employee was involved in the investigation, Am. Compl. ¶ 17. Specifically, the Amended Complaint alleges that an ACE employee's testimony was provided to an EEO investigator on July 27, 2020. Id. Then, drawing all inferences in favor of Plaintiff, as required in a motion to

---

[5] See supra note 3.

12

dismiss, it is plausible that ACE's participation in the investigation continued through the matter's final adjudication with the ALJ, on July 29, 2021, see Am. Compl. ¶ 16, and affected the temporal proximity of Plaintiff's termination, as Plaintiff suggests, see ECF No. 14 at 7; Holloway, 32 F.4th at 300 (finding that the plaintiff's supervisor merely commenting on his intent to be involved in the EEO investigation was an intervening act sufficient to bridge the temporal gap).

Third, while the June 21, 2021, phone call regarding Plaintiff's use of the TDY rooms is clearly relevant to the wrongful termination claim, one could plausibly infer that a retaliatory motive from the EEO claim and ongoing investigation served as the impetus for ACE's inquiries into Plaintiff's private religious practices in the first instance. Moreover, the alleged circumstances of Plaintiff's termination raise concern. Plaintiff alleged that, within one hour of his termination, he was promptly escorted off the compound, to a plane set to depart the country. Am. Compl. ¶¶ 30, 33. The expediency and urgency of Plaintiff's removal from the compound does not follow, on its face, from Defendant's stated reasons for his termination – that ACE "had 'lost confidence' in Plaintiff's ability to manage the team" – in the face of the numerous "praise and accolades" Plaintiff alleges he had received. Am. Compl. ¶¶ 32, 37. Nor does the nature of Plaintiff's removal from the compound follow from simple

13

discrimination, even considering the information he acceded during the June 21, phone call. Thus, it is plausible that a broader retaliatory motive underlay Plaintiff's termination. It is also of note the proximity to Plaintiff's termination on June 27, 2021, and to the ALJ's final adjudication of the EEO complaint on July 29, 2021.

Ultimately, at this very early stage of litigation, the court **FINDS** that Plaintiff has pleaded facts sufficient to state a plausible claim that Defendant's stated reasons for his termination were pretext for retaliation. Accordingly, Defendant's Motion as it relates to Count Two is **DENIED** at this juncture.[6]

**V. CONCLUSION**

For the reasons stated above, Defendant's Motion, ECF No. 12, is **DENIED**. The Clerk is **DIRECTED** to send a copy of this Memorandum Order to counsel for the parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

REBECCA BEACH SMITH
SENIOR UNITED STATES DISTRICT JUDGE

November 3 , 2022

---

[6] As this case proceeds further, discovery will elucidate the content of ACE's warning to Plaintiff in December 2020; the content of Plaintiff's complaint with the State Department EEO; the ALJ's final adjudication of Plaintiff's complaint with the State Department EEO; the content of Plaintiff's EEOC complaint against ACE; and the resulting EEOC right-to-sue notification; all of which are crucial factors in this matter. See generally infra Exhibit A.

14

**Exhibit A**

CIVIL NO. 2:22cv149
RE: Defendant's Motion to Dismiss, ECF No. 12.
Timeline of Relevant Events

| Date | Event Description |
|---|---|
| Feb. 26, 2019 | Plaintiff begins work for ACE, supporting the State Department in Baghdad, Iraq. |
| May 17, 2019 | Plaintiff contacts the State Department EEO regarding his complaint of discrimination and hostile work environment. |
| July 16, 2019 | Plaintiff files a formal complaint with the State Department EEO. |
| Aug. 5, 2019 | Investigation into Plaintiff's State Department EEO complaint begins. |
| July 27, 2020 | ACE employee provides testimony to the State Department EEO investigator. |
| Aug. 5, 2020 | Investigation into Plaintiff's State Department EEO complaint ends. |
| Aug. 14, 2020 | Plaintiff requests that his State Department EEO complaint be adjudicated by an ALJ. |
| Dec. 17, 2020 | ACE provides Plaintiff with a written warning. |
| Apr. 14, 2021 | Plaintiff's State Department EEO complaint is assigned to an ALJ. |
| June 16, 2021 | Two ACE employees call Plaintiff, inquiring into his use of the TDY rooms for storage of his prayer rug. |
| June 27, 2021 | Plaintiff's employment is terminated by ACE. |
| July 29, 2021 | ALJ submits final adjudication of Plaintiff's State Department EEO complaint. |
| Sept. 15, 2021 | Plaintiff files a charge of discrimination against ACE to the EEOC. |
| Jan. 14, 2022 | The EEOC issues Plaintiff a right-to-sue notification. |
| Apr. 7, 2022 | Plaintiff files his Complaint in this court (Amended: June 9, 2022). |